UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X     Case No.:   1:18-cv-10128
JOSEPH GROSS,

                                        Plaintiff,

                                                                                      **COMPLAINT**

                    -against-

THE METROPOLITAN MUSEUM OF ART, and
JAYSON DOBNEY, individually,                                           Plaintiff Demands a
                                                                                        Trial by Jury

                                        Defendants.
--------------------------------------------------------------------X
Plaintiff, by and through his attorneys, Phillips & Associates, PLLC, hereby complains of the

Defendants, upon information and belief, as follows:


## INTRODUCTION

1. Plaintiff complains pursuant to the Americans with Disabilities Act, as amended, 42 U.S.C.

    §12101 *et seq.* ("ADA"), and to remedy violations of the New York State Executive Law and

    the Administrative Code of the City of New York, based upon the supplemental jurisdiction of

    this Court pursuant to *Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to

    redress the injuries Plaintiff has suffered as a result of being discriminated against by his

    employer on the basis of his actual and/or perceived disability, together with failure to engage

    in the interactive process, failure to provide a reasonable accommodation, retaliation, and

    wrongful termination.


## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343, and

    supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

1

4.  Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

5.  On or about October 3, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.  On or about July 17, 2017, Plaintiff received a Notice of Right to Sue letter from the EEOC.

7.  This action is initially brought within 90 days of said Notice of Right to Sue letter.

## PARTIES

8.  Plaintiff is a disabled male resident of the State of New York, County of Kings.

9.  At all times material, Defendant THE METROPOLITAN MUSEUM OF ART (hereinafter also referred to as "THE MET") was and is a domestic not-for-profit corporation duly incorporated under the laws of the State of New York.

10. At all times material, Defendant JAYSON DOBNEY (hereinafter also referred to as "DOBNEY") was and is a resident of the State of New York.

11. At all times material, Defendant DOBNEY was and is working as a "Curator in Charge" for Defendant THE MET.

12. At all times material, Defendant DOBNEY was and is Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

13. At all times material, Plaintiff was an employee of Defendant THE MET.

## MATERIAL FACTS

14. On or about April 10, 2018, Plaintiff accepted an offer to work for Defendant THE MET as a "Research Assistant," at its 1000 5th Ave, New York, NY 10028 location.  Plaintiff's duties

included performing research and providing administrative support for Defendant THE MET's

upcoming exhibition, "Instruments of Rock."

15. Throughout the interviewing process, Plaintiff did not reveal that he had been suffering from

post-traumatic stress disorder ("PTSD") and depression for the past decade.  Plaintiff feared

that Defendants would not have hired him due to the stigma of mental illness and/or depression

in the workplace.

16. On or about May 3, 2018, Plaintiff experienced severe symptoms of PTSD/depression.  That

day, prior to work, Plaintiff attempted suicide in his apartment.  As a result, Plaintiff did not

report to work that day.

17. Later that night, Plaintiff was discovered by his friends, and he was immediately taken to the

emergency room.

18. The next day, on or about May 4, 2018, Plaintiff's mother telephoned Defendants' "Human

Resources (HR) Manager," Mary Walsh, to inform her that Plaintiff was in the hospital, and

she was waiting to hear back regarding his status.

19. Ms. Walsh replied, "I will let the team know.  Please let him know that we hope he's ok."

Defendants, who were unaware of the nature of Plaintiff's medical condition, took no issue

with Plaintiff's leave.

20. On or about May 7, 2018, Plaintiff's mother again telephoned Ms. Walsh to follow up

regarding Plaintiff's status.  Ms. Walsh replied, "The team hopes [Plaintiff] he gets better soon

and his job will be waiting for him when he is released."  At this point, Defendants were still

not aware of the exact medical reason for Plaintiff's hospital stay or leave.

21. On or about May 10, 2018, while he was still in the hospital, Plaintiff telephoned Defendant

DOBNEY from his doctor's office and stated that he anticipated returning to work that

following Wednesday, May 16, 2018.  Defendant DOBNEY replied, "Focus on getting better, and give HR a letter from the hospital, confirming the dates of your hospital stay."

22. On or about May 15, 2018, Plaintiff was released from the hospital.

23. That day, and as a condition of Plaintiff's release from the hospital, Plaintiff was scheduled to attend two (2) mandatory outpatient appointments at an affiliated Center on May 16, 2018 and May 17, 2018. Plaintiff's doctor, Efe Edos Edhomeriegue, MD, gave Plaintiff a letter confirming the dates of his hospital stay, and cleared Plaintiff to return to work on May 18, 2018.

24. The next day, on or about May 16, 2018, Plaintiff telephoned Defendant DOBNEY to inform him that he would return to work on May 18, 2018.  Defendant DOBNEY replied, "I'll put you in contact with Ms. Walsh, who will tell you what paperwork you need, but we need a release from your doctor."

25. Later that same day, Ms. Walsh left Plaintiff a voicemail confirming that she spoke to Defendant DOBNEY about Plaintiff's intended return to work on May 18, 2018.  Ms. Walsh also sent Plaintiff an email requesting a letter from his doctor verifying his hospital stay.  For the first time, Ms. Walsh also requested a letter from Plaintiff's doctor, clearing him to return to work.

26. On or about May 17, 2018, Plaintiff sent Ms. Walsh a copy of the letter from his doctor, confirming the dates of his hospital stay.  The letter, which confirmed that Plaintiff was hospitalized from May 3, 2018 to May 15, 2018, also revealed that Dr. Edhomeriegue was an Attending Physician PHYCH."  This put Defendants on notice, for the first time, that Plaintiff may have emotional or mental issues and/or was hospitalized in the "Psych" unit.

27. Based on the doctor's note, Defendants stereotyped Plaintiff as "mentally ill," and did not intend to provide Plaintiff with further accommodations and/or reinstate him to his position specifically because of his possible emotional or mental illness.

28. In an email, Plaintiff also informed Ms. Walsh that his doctor would send the medical clearance letter via facsimile.

29. In order to create a pretextual paper trail to terminate Plaintiff because of his actual and/or perceived disability, Ms. Walsh sent Plaintiff an email stating, "You are required to report to HR at 9:00 tomorrow with the letter from the doctor clearing you to return to work." However, Ms. Walsh was aware that Plaintiff's medical clearance document was to be provided to Defendants by his doctor.

30. Later that night, Plaintiff also sent Ms. Walsh an email to find out whether she received the medical clearance.  Ms. Walsh did not respond.

31. On or about May 18, 2018, Plaintiff went to Defendants' HR office and gave Ms. Walsh a physical copy of his doctor's note.  Plaintiff also asked Ms. Walsh whether she received the medical clearance from Dr. Edhomeriegue.  Ms. Walsh coldly replied, "We didn't get anything via facsimile.  You can't be here until we get the clearance.  We need accountability for where you were on May 16th and May 17th."  Plaintiff replied, "I was in mandatory therapy appointments."  Ms. Walsh simply replied, "You can't start work until we get the clearance. Do not return to work until you hear from us."

32. On or about May 21, 2018, Plaintiff emailed Ms. Walsh again to find out whether she received the medical clearance.  Once again, Ms. Walsh did not respond.

33. On or about May 23, 2018, Defendant DOBNEY telephoned Plaintiff and left him a voicemail stating, "I wanted you to know that I've put a letter to you in the mail, after the last few days."

Defendant DOBNEY sent Plaintiff a termination letter via FedEx, purportedly for failing to provide medical documentation to HR, and "any justification for why [Plaintiff] failed to call out on multiple days, or provided any documentation that [Plaintiff] you have been cleared to return to work."

34. Defendants' reason for terminating Plaintiff was pretext.

35. Defendant THE MET failed to engage in the interactive process.

36. On or about May 23, 2018, Defendants terminated Plaintiff because of his actual and/or perceived disability (PTSD/depression).

37. On or about May 23, 2018, Defendants terminated Plaintiff because he requested and/or needed a reasonable accommodation.

38. On or about May 23, 2018, Defendants terminated Plaintiff so they would not have to grant him further accommodations on the basis of his disability (PTSD/depression).

39. Defendants' stated reason for terminating Plaintiff is pretext because he provided Defendant THE MET with all of the necessary information.

40. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

41. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered and continues to suffer severe emotional distress and physical ailments.

42. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

43. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

44. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendants.

**AS A FIRST CAUSE OF ACTION**
**UNDER THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**DISCRIMINATION**
**(Against Defendant THE MET Only)**

45. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

46. Plaintiff claims that Defendant THE MET violated Titles I and V of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq. §12112 specifically states:

> a.   General Rule- No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

47. Defendant THE MET violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**UNDER THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**RETALIATION and INTERFERENCE**
**(Against Defendant THE MET" Only)**

48. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

49. Section 42 U.S.C. §12203 of the ADA.  Prohibition against retaliation and coercion provides as follows:

> a)   Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this

7

chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

b) Interference, coercion, or intimidation: It shall be an unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

50. Defendant THE MET violated Plaintiff's above rights as set forth herein.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

51. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

52. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's. . . disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

53. Defendants engaged in unlawful discriminatory practices by discriminating against the Plaintiff because of his actual and/or perceived disability, together with failure to engage in the interactive process, and unlawful termination.

54. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## UNDER STATE LAW
## <u>RETALIATION</u>

55. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs

of this Complaint as if more fully set forth herein at length.

56. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

57. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and

otherwise discriminating against Plaintiff because of his opposition to Defendants' unlawful

actions and his request for a reasonable accommodation.

## AS A FIFTH CAUSE OF ACTION
## UNDER STATE LAW
## <u>FAILURE TO PROVIDE A REASONABLE ACCOMMODATION</u>

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

59. New York State Executive Law §296(3)(a) provides:

> "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

60. Defendants engaged in an unlawful discriminatory practice by discriminating against the

Plaintiff by failing to provide a reasonable accommodation, and by failing to engage in the

interactive process.

9

## AS A SIXTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

61. Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

62. The Administrative Code of the City of New York §8-107 [1] provides that "It shall be an

unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because

of the actual or perceived … disability of any person, to refuse to hire or employ or to bar or

to discharge from employment such person or to discriminate against such person in

compensation or in terms, conditions or privileges of employment."

63. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working

conditions, and otherwise discriminating against Plaintiff on the basis of his actual and/or

perceived disability, together with failure to engage in the interactive process, and unlawful

termination.


## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraph

of this Complaint as if more fully set forth herein at length.

65. New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person in any
> activity to which this chapter applies to retaliate or discriminate in any
> manner against any person because such person has (i) opposed any practice
> forbidden under this chapter, (ii) filed a complaint, testified or assisted in
> any proceeding under this chapter (iii) commenced a civil action alleging
> the commission of an act which would be an unlawful discriminatory
> practice under this chapter …"

10

66. Defendants engaged in an unlawful and retaliatory practice by retaliating, and otherwise discriminating against the Plaintiff because he opposed Defendant's unlawful employment actions and because he requested a reasonable accommodation.

### AS AN EIGHTH CAUSE OF ACTION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. The Administrative Code of the City of New York §8-107(15)(a) provides:

> "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

69. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(15)(a) by failing to provide a reasonable accommodation, and by failing to engage in the interactive process.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in an unlawful employment practice prohibited by the ADA, the New York Executive Law, and the Administrative Code of the City of New York, on the basis of Plaintiff's actual and/or perceived disability, together with failure to engage in the interactive process, retaliation and wrongful termination.

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       November 1, 2018

By: _____
    PHILLIPS & ASSOCIATES, PLLC
    *Attorneys for Plaintiff*
    Silvia C. Stanciu, Esq.
    45 Broadway, Suite 620
    New York, NY 10006
    (212) 248-7431